## STANDARD ROPE & TWINE CO. v. OLMEM *et al.*

1. Under Comp. Laws, § 3635, providing that one who sells merchandise inaccessible to examination by the buyer thereby warrants that it is sound and merchantable, a manufacturer who sells binding twine in balls, with a tag attached to each ball, reciting, "Every ball guarantied of superior quality," is bound to know whether it is fit for the purpose indicated, and for which the purchase was made.

2. Where in an action for the price of binding twine, defendant claims that it was unfit for the purposes for which it was sold, evidence is admissible to show that the quality of the twine rendered it more susceptible to the action of crickets, by reason of which it was almost totally destroyed after the grain was bound.

3. After the receipt of defendant's order for a car load of Sisal binding twine, plaintiff sent defendant a sample bag of Sisal twine, of excellent quality, which was labeled "Crown Brand." When the car load arrived, the twine was labeled "Sewall Day Brand," and was of an inferior quality. *Held*, in an action for the price, that evidence concerning what plaintiff denominated a "sample bag," in rendering its account, was properly admitted.

CORSON, J., dissenting.

(Opinion filed June 20, 1900.)

Appeal from circuit court, Minnehaha county.    Hon. JOSEPH W. JONES, Judge.

Action by the Standard Rope & Twine Company against A. M. Olmem and others for goods sold and delivered. From a judgment for defendant, plaintiff appeals. Affirmed.

*Davis, Lyon & Gates* (*H. F. Woodard*, of counsel), for appellant.

The facts are stated in the opinion.

To constitute a sale by sample it must appear that the parties contracted solely with reference to the sample, and mutu-

ally understood that they were so dealing with the quality of the bulk.   10 Am. & Eng. Enc. Law, 167; Reynolds v. Palmer, 21 Fed. 433; Proctor v. Spratty, 78 Va. 258; Day v. Rognet, 14 Minn. 273.

Parol evidence is not admissible to show a sale by sample in the case of a written contract.   Wiener v. Whipple, 53 Wis. 298; Tiedeman on Sales, § 188.

*A. B. Kittredge,* for respondents.

In an executory contract for the sale of personal property, the law implies that the article when furnished shall be of merchantable quality.   10 Am. & Eng. Enc. Law, 139; 2 Benjamin on Sales. 842.

FULLER, P. J.   Upon the evidence introduced at the trial of this action,   to recover $1,760 for a car load of Sisal binding twine manufactured by plaintiff, and sold at that price to the defendant Olmem, the jury found that the same was without value; and this appeal is from a judgment accordingly entered, and from an order overruling a motion for a new trial.

On the 20th of June, 1898, respondent, at his place of business, at Garretson; S. D., addressed a letter to appellant, at Minnneapolis, Minn., in part as follows:   "I shall need 20,000 lbs. No. 1 Sisal binding twine. Can you furnish me that amount? * * * If so, please let me know by return mail. * * *"   Within a day or two the price and terms of payment were agreed upon, and the appellant sent respondent a 60-pound sample bag of Sisal twine, of excellent quality, labeled 'Crown Brand,'" by the use of a tag attached to each ball.   On the 15th day of July following a formal written order or contract for the twine was approved by the company, and ship-

ment of the car load was made, arriving at Garretson about four days later, where it was taken from the car to respondent's warehouse, and some of the bags opened. Now, this was not the Crown but the Sewall Day, brand, as shown by a tag attached to each ball, upon which was printed the following representation: "Every ball guarantied of superior quality." The record contains supcradded facts which convincingly establish that the entire car load of twine was absolutely worthless, and concerning the point respondent testified: "When I received the car load of twine from the plaintiff, I saw that it was not the twine I expected. I expected that it would be Crown brand, so I opened a good many of the bags, and found that it was all the same. I found that the balls contained a slip, with a special guaranty on every ball, and I relied npon that guaranty that this brand of twine might be as good as the Crown brand, I had known the Crown brand for three years. I noticed that this twine was a lighter color than any Sisal twine I ever saw. Of course, Sisal twine is generally lighter than some other kinds of twine, but this twine had a lighter color than any Sisal twine I ever saw. I did not pay any attention to that, because I relied upon the guaranty, and supposed it would be a superior quality and good twine. As regards oil or grease, I noticed that, when I piled it on the floor that it did not show any marks on the floor. All the twine I ever handled before would leave kind of oil marks, and would stick to the floor for months, which I took to be an insect preparation. The Crown brand, with which I was familiar, would leave sort of grease marks on the floor. That is true of all the twine I ever had, except the twine in controversy. I have had from two to three car

loads a year. I observed how this twine worked in the field at Allen's place. I noticed that the binder threw out a good many loose bundles, and that he had a good deal of trouble in cleaning the needle and re-threading the needle, because the twine was stiff and had big lumps in it. Seems as though there were lumps of wood in it, and when those got to the needle it would clog and break the disk. There would be chunks nearly as big as your thumb for an inch or two; and lots of places, a rod or so long, would be a quarter of an inch thick. Then, of course, there would be places where it would be as fine as a cotton spool of thread. It was impossible for the thick parts to pass through the needle and disk, and the cord would break. Of course, it would break when it came to the thin places. The places I visited for the purpose of observing the condition I have just described were John Schondahl, Mr. Olson, Lars Stinland, Eric Bagstrom, Ole Juleson, John Egg, Gus Olson, and Mr. Allen's. At all these places I found the grain loose, and they were all complaining."

As the contract or order for the twine is upon one of appellant's printed blanks, and contains no express warranty, counsel maintain that respondent took the risk of its fitness for the use intended, and, having bought and obtained Sisal twine, without designation as to its quality, must pay the full price agreed upon. By winding this twine into balls for the purpose of preparing it for use, appellant, the manufacturer, rendered it practically impossible for a prospective purchaser to inspect any considerable portion of such product; and, in order to obtain customers it attached a tag to each ball, upon which appeared, in bold type, "Every ball guarantied of superior quality." Knowing that respondent was a retail dealer in

binding twine, appellant solicited and obtained his order for a car load of such twine, thus manufactured and tagged, which it was bound to know was unfit for the purpose indicated by the terms of the contract, and for which the purchase was made. As the facts in this case bring it so clearly within Section 3635 of the Compiled Laws, which provides that "one who sells, or agrees to sell merchandise inaccesible to examination of the buyer, thereby warrants that it is sound and merchantable," we need not determine whether appellant is bound as a manufacturer to order for a particular purpose, under Section 3634, or whether the tag amounts to an express warranty, within the following provison: "One who sells or agrees to sell any article to which there is affixed or attached a statement or mark to express the quantity or quality thereof, or the place where it was in whole or in part produced, manufactured or prepared, thereby warrants the truth thereof." Comp. Laws, 3637. Evidently respondent accepted this twine, which proved to be unlike the sample or any other kind he had yet seen, by reason of the fact that appellant manufactured the same, and published to dealers and consumers its representation as to quality; and a strong case is thereby presented for the application of the statutory rule of implied warranty, enacted for the benefit of those who of necessity must purchase such property without inspection. This rule of the statute, in opposition to the maxim of *caveat emptor*, accords completely with the weight of authority, and he who purchases under such circumstances has a right to expect a saleable article. Merriam v. Field, 24 Wis. 640; Newbery v. Wall, 35 N. Y. Super. Ct. 106; Benj. Sales, p. 613; 10 Am. & Eng. Enc. Law, p. 139. As this worthless Sisal twine was not specifically

described, nor its actual condition capable of being ascertained, until put to the use for which it was manufactured and sold, it would be grossly unjust to compel respondent to pay the contract price. Numerous witnesses testified to facts tending to support the inference that the quality of the twine rendered it more susceptible to the action of crickets, by which it was almost totally destroyed after the grain was bound, and, while such evidence was clearly overcome by competent proof, we regard it admissible as going to the measure of damages for a breach of the implied warranty, which is the difference between the actual value of the twine if any it had, when bought, and what it would have been worth if merchantable, Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942.

Though the sale was not by sample, the evidence concerning what appellant denominated a "sample bag," in rendering its account, was properly admitted, and the case was submitted to the jury under instructions of which appellant has no just cause for complaint. Every question essential to a proper disposition of the case has been carefully considered. The judgment appealed from is affirmed.

CORSON, J., dissents.